IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-HC-2068-FL

| | |
|---|---|
| OTTIS McGILL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ERIK A. HOOKS, Secretary, N.C. ) | |
| Department of Public Safety, et al., ) | |
| ) | |
| Respondents.[1] ) | |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the court on respondents' motion for summary judgment (DE 12) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and in this posture are ripe for decision. For the reasons that follow, the court grants respondents' motion.

**STATEMENT OF THE CASE**

On March 31, 2015, petitioner pleaded guilty pursuant to a written plea agreement to two counts of common law robbery and having attained the status of habitual felon, in the Superior Court of New Hanover County. (Resp't App. Ex. 3 (DE 14-3) at 41-44).[2] The state trial court sentenced

---

[1] Petitioner named "State of North Carolina" as respondent in this action. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed pursuant to 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Respondents represent that Erik A. Hooks ("Hooks"), the Secretary of the North Carolina Department of Public Safety, and other unidentified parties designated "et al." are the proper respondents in this action. (See Mot. Summ. J. (DE 12) at 1). The court has constructively amended the case caption to reflect the correct respondents in this action, and will direct the clerk to so amend the caption on the docket.

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

petitioner to consecutive terms of 117 to 153 months' imprisonment. (Id. at 76-81). The North Carolina Court of Appeals affirmed petitioner's convictions and the trial court's order denying petitioner's motion to withdraw his guilty plea. State v. McGill, 791 S.E.2d 702, 711 (N.C. Ct. App. 2016), cert. denied 797 S.E.2d 12 (N.C. 2017). Petitioner filed motions for appropriate relief ("MAR") in the state trial court on April 19 and October 25, 2017. (Resp't App. Exs. 8 (DE 14-8), 12 (DE 14-12)). The MAR court denied both of the motions, and the North Carolina Court of Appeals denied petitioner's petitions for discretionary review. (Resp't App. Exs. 9 (DE 14-9), 11 (DE 14-11), 13 (DE 14-13), 15 (DE 14-15)).

On May 1, 2018, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging his state convictions should be vacated based on numerous constitutional violations that occurred during his state criminal proceedings. Respondents filed the instant motion for summary judgment, on December 6, 2018, relying upon a memorandum of law, statement of material facts, and appendix, including records from petitioner's state criminal proceedings at the trial and appellate levels. In opposition, petitioner relies upon an opposing statement of material facts and appendix, including additional records from petitioner's state criminal proceedings, correspondence between petitioner and his state criminal defense attorneys, and correspondence between petitioner and the North Carolina State Bar.

**STATEMENT OF FACTS**

The facts and procedural history of petitioner's criminal proceedings have been summarized by the North Carolina Court of Appeals as follows:

> On 21 August 2013, Defendant entered a Western Union in Wilmington, North Carolina and demanded money from Calethea Smith ("Smith") who was working at the front counter. Smith gave Defendant approximately $6,403.00 and Defendant

2

fled the premises. The entire exchange between Defendant and Smith was captured on audio and video surveillance.

Several days later on 6 September 2013, Defendant entered New Bridge Bank in Wilmington and demanded that James Taylor ("Taylor") and Lynn Creech ("Creech")—who were working as tellers at the bank at the time—give him all of the money in their cash drawers. Taylor and Creech complied and gave Defendant approximately $2,250.00. Defendant then fled.

Detectives David Timken ("Detective Timken") and K.J. Tully ("Detective Tully") with the Wilmington Police Department were assigned to investigate the robberies. They consulted with Jeff Martens with the U.S. Marshal Task Force, who informed them that he had been looking for Defendant whom he believed was in the Wilmington area and could have perpetrated the robberies. The detectives obtained a photograph of Defendant, and Detective Timken included Defendant's picture in photographic lineups he administered to Smith, Taylor, and Creech, all of whom positively identified Defendant as the man who had committed the robberies. Defendant was subsequently located and arrested.

On 23 June 2014, Defendant was indicted on two counts of common law robbery and obtaining the status of an habitual felon. Shortly thereafter, the State offered him a plea agreement that would have required him to plead guilty to these charges in exchange for concurrent—as opposed to consecutive—prison sentences.

Defendant declined this plea agreement and trial was scheduled for 30 March 2015. Prior to trial, Defendant moved to suppress the results of the photographic lineups. The trial court denied this motion.

On 30 March 2015, Defendant's case was called for trial before the Honorable Phyllis M. Gorham in New Hanover County Superior Court. Shortly after the jury was empaneled, however, Defendant informed the trial court that he did, in fact, want to enter into a plea deal with the State.

After a discussion with his attorney and the State during a recess in the proceedings, Defendant informed the trial court that he wished to plead guilty to the charges against him and proceeded to do so, signing a transcript of plea. In exchange for his guilty plea, Defendant received a prayer for judgment continued—seemingly so he could provide the State with information he possessed concerning an unrelated criminal case in exchange for a potentially more lenient prison sentence.

During the time period following the entry of his guilty plea and prior to sentencing, Defendant engaged in several interviews with the State concerning the unrelated criminal matter. The State ultimately determined not to use Defendant as a witness

in that case, however, and declined to recommend a reduction of his sentence to the trial court.

On 9 April 2015, Defendant filed a pro se motion for appropriate relief wherein he requested to withdraw his guilty plea on the ground that his trial counsel had erroneously informed him that if he entered into the guilty plea his sentence would run concurrently with sentences he was set to receive in connection with unrelated criminal convictions in Robeson and Bladen Counties. He further alleged the existence of an undefined conspiracy amongst court appointed attorneys generally to trick their clients into taking unfavorable plea bargains, stating that "[t]his manner of dispensing with criminal cases has become so profound that many lawyers of the Public Defenders [sic] Office and Court appointed Attorney's [sic] have little to no actual trial experience. Rather, these lawyers trick, manipulate and threateningly coerce defendants to enter guilty plea [sic]. Such a conspiracy has taken place in this case."

On 20 April 2015, Defendant was appointed counsel to represent him regarding his motion for appropriate relief. On 24 August 2015, Defendant's newly appointed counsel filed an amended motion for appropriate relief stating that "Defendant asserts his intention to withdraw his plea, but under a Motion to Withdraw a Guilty Plea and not under a Motion for Appropriate Relief."

On 17 and 22 September 2015, an evidentiary hearing was held on Defendant's motion before the Honorable W. Allen Cobb, Jr. in New Hanover County Superior Court. On 6 October 2015, Judge Cobb entered an order concluding that based on the evidence presented, Defendant's motion to withdraw his guilty plea should be denied.

That same day, a sentencing hearing was held before Judge Cobb who sentenced Defendant to two consecutive sentences of 117 to 153 months imprisonment.

McGill, 791 S.E.2d at 703–05.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

4

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an

> objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct on federal habeas review, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B. Analysis

Petitioner raises the following claims for relief in the instant petition: 1) the trial court violated petitioner's constitutional rights by accepting his guilty plea to attaining the status of an habitual felon without requiring prosecutors to provide a factual basis for his plea; 2) Detective Timken violated petitioner's constitutional rights by using petitioner's booking photograph (which was taken after an arrest) in a photographic lineup shown to the witnesses of the crime; 3) Detective Tully violated petitioner's constitutional rights by using the same booking photograph of petitioner in a different photographic lineup shown to the witnesses; 4) the trial court violated petitioner's constitutional rights by allowing investigators to use his booking photograph in the photographic lineup; 5) the state prosecutor violated petitioner's constitutional rights by allowing investigating officers to use his booking photograph in the photographic lineup; 6) petitioner received ineffective assistance of counsel because his trial counsel failed to appeal the trial court's denial of his motion to suppress the evidence derived from the photographic lineup, failed to investigate his alibi, failed to object to a biased juror, failed to explain he could not withdraw his guilty plea, and failed to explain he could receive consecutive sentences of 117 to 153 months' imprisonment if he pleaded guilty; 7) petitioner received ineffective assistance of counsel because sentencing counsel failed to

present petitioner's MAR to the trial court after sentencing, and failed to call witnesses on his behalf at his sentencing hearing; 8) appellate counsel was ineffective for failing to include his MAR on appeal and failing to argue that petitioner's rights to due process and access to the courts were violated during the trial court proceedings; 9) the trial court lacked jurisdiction to convict and sentence petitioner because state prosecutors breached petitioner's plea agreement by not recommending a mitigated sentence; and 10) prosecutors committed misconduct by making false statements to the court at his motion to suppress hearing.

1. Factual Basis for Plea to Habitual Felon

In his first claim, petitioner alleges state prosecutors did not provide a factual basis for his habitual felon status at his plea hearing, and thus the trial court violated his due process rights by accepting his guilty plea without establishing a factual basis for the plea. Petitioner raised this claim before the North Carolina Court of Appeals, which rejected the argument and held the trial court sufficiently established a factual basis for the plea. McGill, 791 S.E.2d at 710-11.

Contrary to petitioner's assertions, "there is no constitutional requirement that a state court establish a factual basis for a guilty plea before entering judgment on the plea . . . ." Edwards v. Garrison, 529 F.2d 1374, 1376 (4th Cir. 1975). Furthermore, due process does not require a state court to establish a factual basis for a guilty plea unless the defendant pleads guilty while asserting factual innocence, such as by a no contest plea or a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). See Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir.1985); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir.1983); Banks v. McGougan, 717 F.2d 186, 188 (5th Cir.1983).

Even assuming a factual basis is required, the trial court established it here. At his plea hearing, petitioner stipulated under oath to having attained the status of habitual felon, and that a

factual basis existed for that charge. (Resp't App. Ex. 16 (DE 14-16) at 96, 100). The trial court then found as fact that there was a factual basis for the plea. (Resp't App. Ex. 3 (DE 14-3) at 44).[3] Furthermore, at the hearing on his motion to withdraw his guilty plea, petitioner admitted under oath the he previously had been convicted of three felonies, and had attained the status of habitual felon under North Carolina law. (See Resp't App. Ex. 16 (DE 14-16) at 50-51). Accordingly, the state court's decision denying this claim was not contrary to or an unreasonable application of clearly established federal law.

    2.    Motion to Suppress Claims

Petitioner raises numerous claims challenging the trial court's ruling denying his motion to suppress the eyewitness identifications. For example, claims two through five allege the photographic lineups were unreliable because the investigators used his booking photograph. Claim ten alleges prosecutors committed misconduct by making false statement to the court at the suppression hearing. The MAR court adjudicated these claims and denied them on the merits. (Resp't App. Ex 9 (DE 14-9)).

A valid guilty plea constitutes the admission of the material elements of a crime. See McCarthy v. United States, 394 U.S. 459, 466 (1969). A voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Meyer v. Branker, 506 F.3d 358, 367 (4th Cir. 2007) ("[I]t is well known that a defendant's guilty plea itself serves as a 'conviction,' supplying 'both evidence and verdict.") (citing Boykin v. Alabama, 395 U.S. 238, 242, 243 n. 4 (1969)). Therefore, "[w]hen a criminal defendant

---

[3] Furthermore, at the hearing on his motion to withdraw his guilty plea, petitioner admitted under oath the he previously had been convicted of three felonies, and had attained the status of habitual felon under North Carolina law. (See Resp't App. Ex. 16 (DE 14-16) at 50-51).

8

has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267.

Here, the record reflects that petitioner swore under oath that he understood he was pleading guilty to two counts of common law robbery and having attained the status of habitual felon. (Resp't App. Ex. 3 (DE 14-3) at 41-44). Petitioner further testified at his plea hearing that he discussed his case fully with his lawyer, that his lawyer explained the nature of the charges, each element of the offenses, and any possible defenses. (Id. at 41). Petitioner's counsel also certified that she explained to petitioner the nature and elements of the charges to which petitioner pleaded guilty. (Id. at 43). Petitioner testified that he was satisfied with his attorney's services, and that he was entering his plea of his own free will without any undue outside influence. (Id. at 41, 43). He also agreed that no person made any promises or threatened him in any way to cause him to enter the plea against his wishes. (Id. at 43). Finally, petitioner testified that he was not under the influence of alcohol, drugs, narcotics, medicines, or pills when he pleaded guilty. (Id. at 41). After listening to petitioner's response to the guilty plea colloquy in open court and observing petitioner's demeanor, the trial court judge found as a fact that petitioner was competent to stand trial. (Id. at 44).

Absent extraordinary circumstances, these solemn in-court representations should be deemed conclusive. Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984). Petitioner's own conclusory statements contained in his federal habeas petition and his response in opposition to the instant motion are insufficient to breach the formidable barrier of

9

Blackledge. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing . . .[,] a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrogated on other grounds by, Gray v. Netherland, 518 U.S. 152, 165–66 (1996). Based upon petitioner's plea transcript and petitioner's representations under oath, the court finds petitioner's guilty plea was knowingly and voluntarily entered with the advice of competent counsel.

Accordingly, petitioner's claims two through five and ten, which allege constitutional violations at the motion to suppress hearing, are foreclosed by petitioner's subsequent knowing and voluntary guilty plea. The MAR court's adjudication of these claims therefore was not contrary to or an unreasonable application of clearly established federal law, and the court grants respondents' motion for summary judgment as to these claims.

    3.      Ineffective Assistance of Counsel

In claims six through eight, petitioner alleges he received ineffective assistance of trial counsel, sentencing counsel, and appellate counsel. As to the claims asserted against trial counsel, petitioner alleges she failed to appeal the trial court's order denying his motion to suppress, failed to investigate his alibi, failed to object to a biased juror, failed to inform him he could not withdraw his guilty plea, and failed to explain he could receive consecutive sentences of 117 to 153 months' imprisonment if he pleaded guilty. (Pet. (DE 1) at 13-14). The North Carolina Court of Appeals adjudicated petitioner's claim that his guilty plea was involuntary based on trial counsel's alleged failure to accurately inform petitioner about the sentence, and denied the claim on the merits. McGill, 791 S.E.2d at 709-10. The MAR court adjudicated the remainder of these claims and

denied them on the merits. (Resp't App. Ex. 13 (DE 14-13)).

To establish ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The court begins with petitioner's contention that his counsel failed to appeal the trial court's order denying the motion to suppress. In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court discussed an attorney's obligation to consult with his client about an appeal. In particular, the Court explained

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Flores–Ortega, 528 U.S. at 480; see also Gordon v. Braxton, 780 F.3d 196, 200 (4th Cir. 2015). In assessing whether an attorney had a constitutional duty to consult,

> the Court [in Flores-Ortega] indicated that several factors were relevant, including whether the conviction followed a trial or guilty

> plea. In cases involving guilty pleas, the Court instructed lower courts to consider whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived appeal rights.

United States v. Poindexter, 492 F.3d 263, 268 (4th Cir. 2007) (internal quotation marks omitted); United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (finding that even when a client does not expressly request an appeal, counsel must consult with her client about an appeal when a rational defendant would want to appeal or the client expresses interest in an appeal).

As to the prejudice prong of an ineffective assistance of counsel claim premised on failure to consult about filing an appeal, petitioner must demonstrate "a reasonable probability that he would have filed an appeal 'but for' counsel's failure to file or consult. The defendant need not show that his appeal has merit." Gordon, 780 F.3d at 200 (quoting Flores-Ortega, 528 U.S. at 484)).

Here, petitioner presents no evidence that would trigger a duty to consult either prong of the Flores-Ortega test. Petitioner does not allege that he informed his counsel he wanted to appeal the motion to suppress ruling. The record also belies petitioner's contention that a rational defendant would have wanted to appeal. As set forth above, petitioner entered a guilty plea in exchange for a prayer for judgment and deferred sentencing, in hopes of providing substantial assistance and receiving a mitigated sentence – and state prosecutors provided that opportunity. Poindexter, 492 F.3d at 268 (explaining whether defendant received the benefit bargained for is a relevant factor in determining whether a rational defendant would have wanted to appeal). In the plea transcript, petitioner expressly acknowledged that his guilty plea limited his right to appeal, and petitioner did not reserve his right to appeal the trial court's order denying his motion to suppress in the agreement. (Resp't App. Ex. 3 (DE 14-3) at 41-44). And there is no evidence state prosecutors would have

agreed to prayer for judgment and deferred sentencing if petitioner reserved his right to appeal in the plea transcript. Accordingly, petitioner has not shown that a rational defendant would have wanted to appeal in these circumstances. See Flores–Ortega, 528 U.S. at 487 (noting circumstances of the petitioner's guilty plea is a "highly relevant factor" in the inquiry of whether a rational defendant would have wanted to appeal); United States v. Courtade, 929 F.3d 186, 194 (4th Cir. 2019) (explaining "whether the defendant received the sentence bargained for" is a relevant factor).

Petitioner also has not presented sufficient evidence to create a genuine issue of material fact with respect to the prejudice prong. Petitioner does not suggest there is "a reasonable probability that he would have filed an appeal 'but for' counsel's failure to file or consult." Gordon, 780 F.3d at 200 (quoting Flores-Ortega, 528 U.S. at 484)). Indeed, as stated above, petitioner never expressed interest in appealing the motion to suppress ruling until months after he pleaded guilty when he was dissatisfied with his sentence. And petitioner's solemn affirmation at the plea hearing that he understood his guilty plea would limit his right to appeal and failure to reserve his right to appeal the motion to suppress ruling belies any suggestion that petitioner has shown a reasonable probability he would have appealed the motion to suppress ruling. See Flores-Ortega, 528 U.S. at 485 (noting that question of whether defendant "promptly expressed a desire to appeal" is "highly relevant" to the prejudice prong).

Accordingly, the court finds petitioner has not shown trial counsel was ineffective by failing to file an appeal of the trial court's order denying the motion to suppress.

Petitioner also asserts trial counsel failed to "object" to a biased juror who made "prejudicial remarks" in front of other prospective jurors during jury selection. Contrary to petitioner's assertions, the record reflects that trial counsel successfully struck the juror for cause. (Resp't App.

Ex. 14 (DE 14-16) at 235). The "prejudicial remarks" the juror allegedly made in front of the other prospective jurors were that he knew two of the State's witnesses and was inclined to believe their testimony. (Id. at 228-29). Liberally construing the petition, the court assumes petitioner is alleging that trial counsel should have requested a mistrial when the prospective juror made these remarks.

"Counsel's conduct is generally presumed to be a reasonable strategic choice, but is not reasonable to the extent that the choice of strategy does not rely upon either a full investigation of the law and facts or an abbreviated investigation of the law and facts limited only by 'reasonable professional judgments.'" Buckner v. Polk, 453 F.3d 195, 201 (4th Cir. 2006) (quoting Strickland, 466 U.S. at 690-91). Assuming the decision is reasonable under the foregoing standard, counsel is not ineffective for failing to request a mistrial even if the client requests one. United States v. Chapman, 593 F.3d 365, 370 (4th Cir. 2010); see also Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991) ("The best course for a federal habeas court is to credit plausible strategic judgments in the trial of a state case."); Walker v. Lockhart, 852 F.2d 379, 382 (8th Cir. 1988). "[L]egal judgments based on thorough investigation are virtually unassailable on [federal habeas] review." Meyer v. Branker, 506 F.3d 358, 374 (4th Cir. 2007).

Here, trial counsel testified at the hearing on petitioner's motion to withdraw his guilty plea that she believed the jury selected would be impartial and that petitioner had a reasonable possibility a not guilty verdict with the jury selected. (Resp't App. Ex. 16 (DE 14-16) at 228, 258). Accordingly, trial counsel's strategic choice to proceed with the empaneled jury was based on her reasonable professional judgment, informed by her voir dire of the jurors, and therefore does not constitute ineffective assistance of counsel. See Chapman, 593 F.3d at 370; Walker, 852 F.2d at 382. Petitioner also has not shown that the trial court would have granted a mistrial in these

14

circumstances. Therefore, his claim that he would not have pleaded guilty if counsel had moved for and been granted a mistrial does not establish the prejudice prong of the Strickland standard. Hill, 474 U.S. at 59 (discussing prejudice prong of ineffective assistance of counsel claim in context of a guilty plea). Accordingly, this ineffective assistance of counsel claim fails.

Petitioner also alleges that his trial counsel failed to investigate his "alibi." Petitioner, however, has not shown how the alleged "alibi" would have proven his innocence or resulted in a different outcome. (See Pet'r Mem. (DE 18) at 14-15). Trial counsel is not ineffective for failing to investigate petitioner's undefined alibi. See Strickland, 466 U.S. at 691.

Petitioner also asserts that his trial counsel failed to explain that his sentences would run consecutively before he accepted the guilty plea. At hearing on petitioner's motion to withdraw his guilty plea, petitioner's trial counsel testified that she advised him, prior to his guilty plea, that all sentences would run consecutively. See McGill, 791 S.E.2d at 709. Based on this testimony, the North Carolina Court of Appeals concluded "the record plainly and unambiguously shows that [petitioner] was fully informed of the consequences of accepting his plea and did so both knowingly and voluntarily. Id. at 710. Similarly, the state trial court's order denying petitioner's motion to withdraw his guilty plea contained the following finding of fact: "[d]efendant understood the consequences of his guilty plea. He was not confused as to the charges, or potential sentences, and knew his possible maximum exposure. The plea agreement was clear. There was no agreement [between petitioner and prosecutors] as to the sentence." (Resp't App. Ex. 3 (DE 14-3) at 71).

On federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240

15

(2005); Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008). Thus, the state court's determinations that petitioner was "fully informed about the [sentencing] consequences of accepting his plea" and that he was "not confused as to the . . . sentences" is presumed correct. Petitioner's conclusory assertions that his counsel failed to inform him that his sentences on the robbery counts would run consecutively are insufficient to rebut the presumption, and thus petitioner's claim lacks merit.

Petitioner also alleges that trial counsel failed to inform he would not be able to withdraw his guilty plea. Petitioner has not established a genuine issue of material fact as to the prejudice prong of the Strickland test for this claim. As set forth above, petitioner affirmed under oath in open court that he was in fact guilty of the offenses, that he was not being coerced into pleading guilty, and that his guilty plea limited his right to appeal his conviction and sentence. Petitioner also pleaded guilty because he expected to receive a recommended mitigated sentence based on substantial assistance. There is no evidence that petitioner would not have pleaded guilty if trial counsel had informed him that he would not subsequently be allowed to withdraw the plea. Hill, 474 U.S. at 59.

In his seventh and eighth claims, petitioner asserts ineffective of counsel at his sentencing proceeding and on appeal. Because these claims occurred after petitioner's guilty plea, the Strickland ineffective assistance of counsel test is slightly different. As to the claim that sentencing counsel was ineffective, petitioner must show that counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Strickland, 466 U.S. at 686. For the prejudice prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694.

To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show

16

that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687–88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Petitioner's seventh claim alleges his sentencing counsel was ineffective because he failed to call a witness that would have testified he provided substantial assistance to state authorities. The issue of whether petitioner provided substantial assistance was thoroughly addressed at petitioner's sentencing hearing, and petitioner has not demonstrated that the additional witness's testimony would have changed the outcome. (Resp't App. Ex. 16 (DE 14-16) at 297-316). Additionally, the decision whether to call a witness is afforded "enormous deference" and petitioner has not shown that counsel's failure to call the witness fell below an objective standard of reasonableness, particularly where the proffered witness's testimony appears cumulative of the evidence presented at the hearing. See United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004); United States v. Shaflander, 743 F.2d 714, 718 (9th Cir. 1984) (failure to call witness who would present cumulative testimony does not constitute ineffective assistance of counsel). Accordingly, this ineffective assistance of counsel claim lacks merit.[4]

---

[4] Petitioner also asserts sentencing counsel was ineffective for failing to present his MAR after sentencing, and instead filing a notice of appeal. Petitioner was allowed to file his MAR after his appeal, and the MAR court denied it on the merits. (Resp't App. Exs. 8 (DE 14-8), 9 (DE 14-9), 12 (DE 14-12), 13 (DE 14-13)). Accordingly, this claim is belied by the record.

In his eighth claim, petitioner alleges appellate counsel was ineffective for advising him not to file his MAR with the appeal and failing to present argument that his rights to due process and access to the courts were violated during his criminal proceedings. Petitioner's conclusory assertions that appellate counsel failed to present argument concerning undefined "due process" and "access to the courts" claims on appeal do not establish ineffective assistance of appellate counsel. See Nickerson, 971 F.2d at 1136 ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). As to petitioner's claim that appellate counsel failed to present the arguments contained in his MAR to the appellate court, petitioner fails to explain how his refusal to do so would have changed the outcome of the appeal. To the extent petitioner is claiming the claims in the instant petition would have been successful if presented to the North Carolina Court of Appeals, the court disagrees for the reasons set forth herein.

Based on the foregoing, the North Carolina Court of Appeals and the MAR court's adjudications of petitioner's ineffective assistance of counsel claims (claims six through eight) were not contrary to or an unreasonable application of clearly established federal law, and the court therefore grants respondents' motion for summary judgment as to these claims.

4.  Breach of the Plea Agreement

In his ninth claim, petitioner alleges state prosecutors breached the plea agreement by failing to recommend a sentence in the mitigated range. The MAR court adjudicated this claim and denied it on the merits. (Resp't App. Ex. 13 (DE 14-13)).

The transcript of plea reflects that petitioner agreed to plead guilty in exchange for deferred sentencing – it does not contain an express promise by state prosecutors to request a sentence in the mitigated range. (Resp't App. Ex. 3 (DE 14-3) at 41-44). Additionally, the state court found as fact

that state prosecutors did not promise to recommend a mitigated sentence. (Resp't App. Ex. 3 (DE 14-3) at 68). As explained above, this factual finding is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El, 545 U.S. at 240. Petitioner has not presented evidence sufficient to rebut the state court's finding. Accordingly, the MAR court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law, and the court grants respondents' motion for summary judgment as to this claim.

C. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling.'" Rose, 252 F.3d at 684 (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

## CONCLUSION

Based on the foregoing, the court GRANTS respondents' motion for summary judgment (DE 12) and DENIES a certificate of appealability. The clerk is DIRECTED to close this case, and to amend the docket as set forth in footnote one.

SO ORDERED, this the 24th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge